IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

MANDY R.,

                Plaintiff,

    v.                                              Civil Action No.
                                                      3:22-CV-1247 (DEP)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security

                Defendant.

---

APPEARANCES:                             OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM       PETER GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13760-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.           FERGUS KAISER, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on December 19, 2023, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Plaintiff's motion for judgment on the pleadings is GRANTED.

---

[1] This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18. Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)   The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)   The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)   The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   December 28, 2023
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
MANDY ROONEY,

                              Plaintiff,

vs.                           Case No. 3:22cv1247

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                              Defendant.
-------------------------------------------x
```

Transcript of a Decision from a Teleconference Hearing held on December 19, 2023, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

| | |
|---|---|
| For Plaintiff: | LACHMAN, GORTON LAW FIRM<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, New York 13760-0089<br>BY: PETER A. GORTON, ESQ. |
| For Defendant: | OFFICE OF PROGRAM LITIGATION, OFFICE 2<br>SOCIAL SECURITY ADMINISTRATION<br>6401 Security Boulevard<br>Baltimore, Maryland 21235<br>BY: FERGUS J. KAISER, ESQ. |

*Lisa M. Mazzei, RPR*
*Official United States Court Reporter*
*10 Broad Street*
*Utica, New York  13501*
*(315) 266-1176*

|    |    |
|----|----|
| 1  | (The following is an excerpt of a |
| 2  | teleconference hearing held on 12/19/2023.) |
| 3  | THE COURT:  Thank you.  Let me begin by thanking |
| 4  | Counsel for excellent written and oral presentations. |
| 5  | Plaintiff has commenced this action pursuant to 42 |
| 6  | United States Code Sections 405(g) and 1383(c)(3) to |
| 7  | challenge an adverse determination by the Acting Commissioner |
| 8  | of Social Security finding that she was not disabled at the |
| 9  | relevant times and therefore ineligible for the Title 16 |
| 10 | benefits for which she applied. |
| 11 | The decision -- the background is as follows: |
| 12 | Plaintiff was born in November of 1987.  She is currently 36 |
| 13 | years of age.  She was 29 years old at the alleged onset of |
| 14 | her disability, which coincides with the application date of |
| 15 | December 13, 2016.  She stands 5 foot 5 inches in height and |
| 16 | weighs between 155 and 163 pounds at various times. |
| 17 | Plaintiff lives in Lisle, New York, with her |
| 18 | boyfriend and seven children.  In July of 2022, they ranged |
| 19 | in age from 6 to 17.  Plaintiff's boyfriend works.  Plaintiff |
| 20 | dropped out of school during the ninth grade and did not |
| 21 | achieve a GED.  While in school, she was in special education |
| 22 | classes.  Plaintiff is right-handed.  She has no driver's |
| 23 | license. |
| 24 | Plaintiff's work in the past has consisted of a |
| 25 | manufacturing assembly position where she loaded items onto |

1  conveyer belts, and she worked there for approximately five
2  months in 2012.  She was also a cashier at a Speedway
3  convenience store in 2019.  She left that position because
4  she was asked not to return after too many call-ins.
5              Plaintiff suffers from various physical impairments
6  but they are not the focus of this proceeding.  Mentally,
7  plaintiff suffers from anxiety, which she began to experience
8  in 2006; depression, a learning disorder, possible borderline
9  intellectual functioning and panic attack disorder.
10 Plaintiff testified that she experiences panic attacks
11 approximately two or more times per week lasting four hours
12 or so.
13             Plaintiff has treated with various county agencies
14 and hospital facilities where she has had several emergency
15 room visits.  She also treats with Lourdes Whitney Point
16 Family Practice where her primary is listed as Physician's
17 Assistant Bryan Burke, who she has seen since March of 2021.
18             She is not currently in therapy and has had
19 transportation issues, which preclude her from -- according
20 to her, from undergoing therapy.  Plaintiff's conditions have
21 been treated since -- medically since December of 2016 with
22 Zoloft, which she states helps some, but causes drowsiness,
23 and hydroxyzine.
24             In terms of daily living activities, plaintiff
25 showers one to three times per week, grocery shops with her

1  boyfriend one time per month.  She can do dishes, laundry.
2  She does some cooking, mostly, microwave and simple meals
3  during the day, since her boyfriend cooks dinner.  She
4  watches television.  She engages in childcare, although she
5  has help, especially when depressed.  She listens to music.
6  Plaintiff is a smoker and smokes one-half pack of cigarettes
7  per day.
8         Procedurally, plaintiff applied for Title 16
9  benefits on December 13, 2016, alleging an onset date of
10 October 15, 2011.  That was amended, of course, to coincide
11 with the application date.
12        At 235, she claims disability based on depression,
13 anxiety, a learning disorder, generalized anxiety disorder,
14 posttraumatic stress disorder or, PTSD, depression and a
15 shoulder injury.
16        A hearing was conducted on January 23, 2019, by
17 Administrative Law Judge Laureen Penn, with a vocational
18 expert.  Judge Penn issued an unfavorable decision on
19 February 6, 2019.  The Social Security Administration denied
20 review of that determination on April 7, 2020.
21        Plaintiff subsequently commenced an action in this
22 court.  The result was a decision on October 28, 2021, from
23 Magistrate Judge Daniel J. Stewart vacating the
24 determination.  I note that the Social Security
25 Administration Appeals Council mistakenly referred to the

1  matter as having been issued out of the Western District of
2  New York.  The decision is not in the record, but it is
3  reported at 2021 Westlaw 5002242 from the Northern District
4  of New York, as I indicated, October 28, 2021.  The Social
5  Security Administration Appeals Council subsequently remanded
6  the matter for a further hearing on March 28, 2022.
7          A hearing was conducted on July 7, 2022, by
8  Administrative Law Judge Gretchen Mary Greisler with a
9  vocational expert.  The Administrative Law Judge subsequently
10 issued an unfavorable decision on September 8, 2022.  This
11 action was commenced on November 22, 2022 and is timely.
12         In her decision, ALJ Greisler applied the familiar
13 five-step sequential test for determining disability.  At
14 step one, she determined that plaintiff had not engaged in
15 substantial gainful activity since December 13, 2016.
16         At step two, she concluded that the plaintiff
17 suffers from severe impairments that impose more minimal
18 limitations on her ability to perform work-related functions,
19 including degenerative disc disease of the lumbar spine,
20 anxiety disorder, depressive disorder and learning disorder.
21         At step three, she concluded that plaintiff's
22 conditions do not meet or medically equal any of the listed
23 presumptively disabling conditions set forth in the
24 Commissioner's regulations, specifically, considering
25 listings 1.15, 1.16, 12.06, 12.11 and 12.04.

1   After surveying the record, ALJ Greisler concluded
2   that plaintiff retains the Residual Functional Capacity, or
3   RFC, to perform light work except that she can perform simple
4   routine tasks at a consistent goal-oriented pace.  She can
5   engage in occasional interaction with supervisors and
6   coworkers but no interaction with the public.
7   Applying that RFC, ALJ Greisler concluded that
8   plaintiff is incapable of performing her past relevant work
9   as a conveyer feeder.  At step five with the benefit of
10  testimony from a vocational expert addressing a hypothetical
11  that tracks the RFC finding ALJ Greisler concluded that
12  plaintiff can perform work available in the national economy
13  citing insufficient numbers citing as examples mail clerk --
14  I can't read my own writing.  Mail clerk, nongovernmental;
15  housekeeping cleaner and merchandise marker, and found that
16  she was therefore not disabled at relevant times.
17  As the parties know, the Court's function in this
18  case is limited to determining whether correct legal
19  principles were applied and the result is supported by
20  substantial evidence, defined as such relevant evidence as a
21  reasonable mind would find sufficient to support conclusion.
22  The test, of course, is extremely deferential, as the Second
23  Circuit has noted in *Brault vs. Social Security*
24  *Administration Commissioner,* 683 F.3d, 443, 2nd Circuit from
25  2012.  And more recently reaffirmed in *Schillo vs. Kijakazi,*

1   31 F.4th 64 from 2022.

2             In considering the argument of counsel --
3   plaintiff's counsel, the Court, as a backdrop, must consider
4   that the burden is on plaintiff to establish not only
5   impairment, but more importantly resulting limitations
6   through step four, including at the RFC level.

7             In this case, plaintiff raises two essential
8   contentions both focusing on the mental impairments, as I
9   indicated earlier, and to some degree they're interrelated.

10            The first is failure to include any limitation on
11  plaintiff's ability to work consistently pursuant to a
12  schedule, and the second is alleged error in evaluating
13  medical opinions of reference.

14            Of course, pivotal to any disability determination
15  is the RFC finding, which represents a finding of the range
16  of tasks that claimant is capable of performing, not
17  withstanding his or her impairments.

18            Ordinarily, an RFC represents a claimant's maximum
19  ability to perform sustained work activities in an ordinary
20  setting on a regular and continuing basis.  Meaning, eight
21  hours a day for five days a week or equivalent schedule.
22  And, of course, an RFC must be informed by consideration of
23  all of plaintiff's, physical and mental abilities,
24  symptomology and other limitations that could interfere with
25  work activities on a regular and continuing basis, as well as

1  all the medical and other evidence.
2          In this case, the residual functional capacity I
3  read, it does not contain any accommodation for plaintiff
4  being off task or absent.
5          In the case there are four medical opinions of
6  record, the first is Dr. O. Fassler from March 24, 2017, and
7  it appears at 61 through 75 of the administrative transcript.
8          In the worksheet portion, section one of the
9  opinion, the -- significantly to the issue at hand,
10 Dr. Fassler assigns a moderate limitation to plaintiff's
11 ability to perform activities within a schedule, maintain
12 regular attendance and be punctual within customary
13 tolerances.
14         The mental residual functional capacity finds that
15 the claimant retains ability to perform unskilled work.
16 There is no discussion of the extent of any off task or
17 absences that are identified in Section 1 in the residual
18 functional capacity section.  ALJ Greisler considered the
19 opinion and, at 633, assigned it some weight.
20         The second opinion on the record is from
21 Dr. Adam Krantweiss from June 15, 2016.  He was a one-time
22 examiner of the plaintiff.  It appears at 460 to 462 of the
23 administrative transcript.  And notably, it does predate the
24 onset date in this case.
25         Dr. Krantweiss expresses concerns based on testing

1  that he administered.  He states, for example, Ms. Rooney's
2  scores on the WRAT showed moderate to marked deficits across
3  all domains.  As such, she would not likely function well in
4  a job that required anything beyond basic reading
5  comprehension, spelling, or mathematical ability.  Combined
6  with deficits in intellectual functioning, this author
7  believes Ms. Rooney would have difficulty maintaining
8  competitive employment in many areas.  And it goes on to
9  state, in conclusion, this author believes Ms. Rooney would
10 have difficulty functioning in competitive work environments.
11         The administrative law judge considered this
12 opinion at page 632, assigned it some weight, and found that
13 it was vague, somewhat vague.  Does not provide a
14 function-by-function assessment consistent with the agency's
15 regulations.  The finding as reported, according to ALJ
16 Greisler, suggests that the claimant is limited to simple
17 work and is consistent with reporting special education
18 services and limitations in Dr. Slowik's report.
19         The third opinion is from Dr. Amanda Slowik, a
20 one-time consultative examiner.  It is dated
21 February 23, 2017.  It appears at 510 to 515 of the
22 administrative transcript.  Significantly, ALJ -- I'm sorry,
23 Dr. Slowik found that the claimant's ability to sustain an
24 ordinary routine, regulate emotions and control behavior is
25 moderately to markedly limited.  The Administrative Law Judge

1   at 632 and 633 I believe found partial weight.
2           There is no mention in the discussion of the
3   ability to maintain a schedule.  The conclusory statement by
4   Dr. -- by ALJ Greisler is that the findings of Dr. Slowik's
5   report had been considered in the established residual
6   functional capacity.
7           The fourth is from Physician's Assistant
8   Bryan Burke.  It is dated May 31, 2022.  It appears at 912 to
9   913 of the administrative transcript.  It covers the period
10  from March 18, 2021 when PA Burke began treating the
11  plaintiff to October 25, 2021.  He finds a moderate
12  limitation in the ability to maintain a schedule and finds
13  that plaintiff will be off task in a normal workday 16 to
14  20 percent.  Which, of course, is higher than the vocational
15  expert testified would be permitted by an employer.  It also
16  opines that plaintiff will be absent two days per month.
17          When assessing these opinions, the ALJ was required
18  under the regulations in effect prior to March 17, 2017, to
19  consider whether a treating physician opinion is entitled to
20  controlling weight.  In this case the opinion of a treating
21  source is from a physician's assistant who is not under the
22  formal regulations entitled to the same deference as a
23  treating physician.  But in addressing other opinions under
24  the formal regulations, an ALJ must then determine what
25  degree of weight and opinion is entitled considering factors

1  like the frequency, length, nature and extent of treatment,
2  the amount of medical opinion supporting the opinion, the
3  consistency of the opinion with the remaining medical
4  evidence in a way that a physician is a specialist.
5          Significantly, in making these findings, an ALJ is
6  required to provide good reasons for the weight afforded to a
7  treating physician's opinion or any opinion of record, which
8  the Second Circuit has defined its reasons supported by
9  substantial evidence in the record.
10         The salient requirement is that there would be
11 sufficient explanation to permit meaningful judicial review.
12 And of course if there are conflicting medical opinions, then
13 it is for the ALJ in the first instance to resolve any such
14 conflicts.
15         *Veino v. Barnhart,* 312 F.3d 578, Second Circuit
16 2002.  In this case, plaintiff argues that the medical
17 opinions of record are uncontradicted when it comes to
18 ability to maintain a schedule.  Dr. Krantweiss, as I
19 indicated, does not address that issue.  PA Burke and
20 Dr. Slowik both find diminishment.  Dr. Slowik finds moderate
21 to marked diminishment.
22         The crux is Dr. Fassler.  In his worksheet, he
23 finds moderate limitation, which show that in Dr. Fassler's
24 view there is some degree of diminishment; it's not none.
25         *Reynolds v. Colvin,* 214 Westlaw 4184729, Northern

1     District of New York, August 21, 2014.  This case bears many
2     similarities to *Pamela P. v. Saul,* 2020 Westlaw 2561106 from
3     the Northern District of New York, May 20, 2020.
4            When it comes to what is meant by moderate
5     limitation under the program operations manual system, or
6     POMS, the internal social security guidebook, moderately
7     limited means the evidence supports a conclusion that the
8     individual's capacity to perform the activity is impaired.
9     And significantly it indicates the degree and extent of the
10    capacity or limitation must be described in narrative format
11    in section 3.
12           In this case, it is not.  So the question is, is
13    there any evidence to support plaintiff's ability to perform
14    pursuant to a schedule without undue off task more than
15    10 percent.  That would be the activities of daily living
16    have been cited.  But there is absolutely no logical bridge
17    between plaintiff's ability to do the activities of a limited
18    basis that she does and work eight hours a day, five days a
19    week.
20           The fact that she can perform childcare, although
21    it's clear that she has help from the older children and also
22    from others when she is depressed, does not suggest that she
23    is capable of working pursuant to a schedule five days a
24    week, eight hours a day*, Colgan v. Kijakazi* 22 F.4th, 353 2nd
25    Circuit 2022.

1           So I don't find any evidence that supports the RFC
2   without any limitation on plaintiff's ability to perform
3   pursuant to a schedule.  And similarly, the evaluation of
4   opinions is woefully deficient in my view in this case.
5           Judge Stewart, in his remanding decision, in
6   *Mandy R. v. Kijakazi,* which I have cited earlier, pointed out
7   that it was error for the ALJ in the first ALJ decision to
8   assign some weight without any further explanation as to what
9   extent she was relying on each.  This does not permit
10  meaningful review by the Court.
11          And my focus in this case is on Dr. Slowik.
12  Although, it's not exclusively, but it's a good example of
13  the failure on the part of the Administrative Law Judge.
14  Dr. Slowik finds moderate to marked limitation on the ability
15  to sustain an ordinary routine.  And yet although partial
16  weight is given at 632 to 633 to that opinion, there is no
17  discussion as to whether or not -- and if so, to what extent,
18  ALJ Greisler concluded that plaintiff would have impairment
19  in the ability to maintain a schedule.  It is simply that
20  he's -- she states the findings of Dr. Slowik's report have
21  been considered in the established residual functional
22  capacity.
23          In essence, this decision suffers from the same
24  deficiency as the earlier decision.  And I understand why
25  that could be.  Unfortunately, for some reason, Judge

1    Stewart's decision did not find its way in the record and
2    ALJ Greisler may well not have had the benefit of that
3    decision when deciding the case for herself.
4            At step five, I look at the step five determination
5    and I conclude the error is harmful.  The vocational expert
6    testified that anything more than 10 percent off task is
7    unacceptable.  The hypothetical that was presented to the
8    vocational expert contained no limitation to address whether
9    the plaintiff would be off task and if so, to what extent.
10           So I conclude that the resulting determination is
11   not supported by substantial evidence and that there was
12   error in weighing the medical opinions of record.  I do not
13   find persuasive evidence of disability.  I will therefore
14   grant judgment on the pleadings to the plaintiff, vacate the
15   determination, and remand the matter to the agency for
16   further consideration.
17           Thank you both for excellent presentations.  I hope
18   you have a happy holiday.
19           MR. GORTON:  To you, too, Judge.  Thank you.
20           MR. KAISER:  You too.  Thank you, your Honor.
21              (Court adjourned, 11:37 a.m.)
22
23
24
25

CERTIFICATE OF OFFICIAL REPORTER

I, LISA M. MAZZEI, RPR, Official U.S. Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 26th day of December, 2023.

/S/ LISA M. MAZZEI

LISA M. MAZZEI, RPR
Official U.S. Court Reporter